CLARENCE B. ISERMAN

*v.*

THE INTERNATIONAL STOKER COMPANY.

[Decided March 15th, 1907.]

Persons were stockholders and not creditors of a corporation, where they received stock under a resolution in the handwriting of one of them, directing its issuance to them for advances, and retained it over four months, when they attached the certificates to their respective claims filed with the corporation's receiver; the papers in a suit by one of such persons in which the receiver was appointed reciting that they were stockholders, and not disclosing the amount of such advances as debts of the corporation, though a schedule of the corporation's debts was set out.

On appeals from receiver's determination.

The main suit was a proceeding under the Corporation act to have the company declared insolvent and an injunction issued and a receiver appointed.

The injunction was issued, and the receiver appointed on the 13th of November, 1905.

On the 26th day of February, 1906, Clarence B. Iserman and Harvey Iserman presented claims to the receiver, the former for the sum of $1,200 and the latter for the sum of $1,686.77. Attached to each claim was a certificate of stock of the defendant corporation. Clarence B. Iserman's certificate called for one hundred shares, and was dated October 20th, 1905, and Harvey

Iserman's certificate called for two hundred and seventy shares, and was dated the same day.

The receiver disallowed the claim of Clarence B. Iserman for $1,000 and allowed it for $200. He disallowed the claim of Harvey Iserman for $1,468.29 and allowed it for $218.48.

Each of these claimants has taken an appeal from the determination of the receiver.

Other creditors have taken appeals from so much of the receiver's determination as allows anything to either of the Isermans.

The case was heard upon the testimony taken before the receiver, together with the exhibits and documentary evidence.

*Mr. George G. Tennant,* receiver, *pro se.*

*Mr. Cornelius Doremus,* for Harvey Iserman and Clarence B. Iserman.

*Mr. Boyd McLean,* for Paul L. Crowe, a stockholder and creditor.

GARRISON, V. C. (after statement of issues).

The reason given by the receiver for disallowing so much of the claim of each of these claimants as he did not allow was that they had each taken stock in the company in liquidation or satisfaction of so much of the claim as was disallowed.

There is no dispute that each of these claimants advanced the amount of money each claims to have advanced. Their contention, however, is that they are entitled to be considered as creditors for such sums of money, whereas the contention of their opponents is that, with respect certainly to a portion of the moneys so advanced, they agreed to accept, and did accept, stock of the company in payment therefor.

Harvey Iserman was secretary and treasurer of this company during the period subject to inquiry. On the 9th day of August, 1904, an agreement in writing was entered into between Paul L. Crowe, Harvey Iserman and Clarence B. Iserman. This agreement recites that Crowe is the owner of a large block of the stock

of the International Stoker Company; that the Isermans desire to purchase stock of Crowe; that Crowe thereby agrees to sell to the Isermans twenty-five shares for $500, said money to be used in installing a stoker in the building of the Commercial Trust Company in Jersey City; that if said stoker is not a success, then the International Stoker Company is to return the money to the Isermans and the stock is to be surrendered; that if the stoker is a success, then Crowe agrees to sell to the Isermans four hundred shares, or any part thereof, at any time within six months after the trust company accepts the stoker, the said stock to be sold at $20 a share; and it is further provided that in case the said stoker is accepted by the trust company, and more money is required to develop and install other stokers before stock can be sold, the Isermans agree to furnish or obtain the money by taking the stock upon which they were given the option for the amount of cash they might advance, not exceeding $3,000, the judgment of the board of directors of the company to be binding as to the amount of money needed. There are other provisions in this contract which it is not necessary to recite.

In June, 1903, it was determined to double the authorized capital of the company, and on the 17th of October, 1904, there is a resolution of the board of directors, of which Harvey Iserman was a member, in which it is provided that certain stock shall be returned to the treasury for sale for the benefit of the company.

"Also, the option given to H. Iserman 200 shares; Clarence B. Iserman 200 shares............be doubled owing to the increase of capital stock and placed in the treasury for the purpose above stated, and if said options are not taken either in part or in whole by the said persons [naming them] the stock to be sold and proceeds placed in the treasury as aforesaid."

At this meeting the claim of Harvey Iserman for money advanced was audited, and he was shown to be a creditor for $700.

Between that meeting and the 25th of September, 1905, Harvey Iserman advanced moneys which, in addition to the $700, made his total advance about $1,500, and Clarence B. Iserman

advanced $500 on the 13th of February, 1905, and $500 on the 13th of May, 1905.

On the 25th of September, 1905, the following preamble and resolutions were adopted by the board of directors:

"*Whereas*, Clarence Iserman has taken up 100 shares of the option given to him according to a certain contract with Mr. Crowe, and having paid the treasurer $500 February 13th and $500 May 13th, for which he holds receipts with a statement that the certificates of stock will be given him when issued; therefore, it was unanimously

"*Resolved*, That the certificates of stock be issued and given to him.

"*Whereas*, H. Iserman has advanced about $1,500 to carry on the business of the company, said money being payment on the options of stock given by Mr. Crowe as per a certain agreement; therefore, be it

"*Resolved*, That certificates of stock be issued and given to H. Iserman for the amount advanced, according to the terms of the option."

There are numerous provisions in the same resolution, among them one by which Clarence B. Iserman and Harvey Iserman give up the balance of their options, amounting respectively to three hundred shares and two hundred and fifty shares, so that the stock is to go into the treasury of the company and be sold by it, and the Isermans are to receive any sum realized over $25 a share, and there is a further provision that Crowe is to put a thousand shares of stock in the treasury, to be sold at an advance over $20 a share.

The company failed to pay the fee for filing the amended certificate authorizing the increase of the capital stock, and therefore the company at this time had not the right to issue the additional stock, and did not acquire the right until some time after these resolutions were passed, when the fee was paid and the company then was authorized to issue the stock.

The testimony is clear that all of the transactions between the Isermans and the company were carried on by Harvey Iserman. He is the father of Clarence B. Iserman, who was a young man just past his majority.

It seems too plain to require extended consideration that by this resolution (which, in passing, it may be remarked is in the handwriting of Harvey Iserman) it was agreed and understood between the parties that each of the Isermans was to receive from this company stock for the advances made by them up to

that time, and all of the oral testimony bears out the righteousness of this conclusion. Clarence B. Iserman was to receive one hundred shares of stock for his $1,000, and Harvey Iserman was to receive the proper amount of stock for his $1,500. The reason why the stock was not then issued to them has just been stated.

Stock was actually issued to each of the Isermans on the 20th day of October, 1905. It was retained by each of them until the 26th day of February, 1906, when they attached the certificates to their respective claims to the receiver and delivered them with the claims.

On November 3d, 1905, the main suit was instituted by Clarence B. Iserman. The bill recites that Clarence B. Iserman is a stockholder of the defendant corporation, holding one hundred shares therein, "for which he paid $1,000 cash." The bill refers to a schedule showing the debts of the company, and such schedule contains no item due Clarence B. Iserman, and recites a claim of Harvey Iserman for $353.48. In an affidavit annexed to the bill Harvey Iserman swears that he

"now owns 270 shares of the stock of the said company, and that Clarence B. Iserman, the complainant in the foregoing bill of complaint, is now the owner of 100 shares of the stock of said company, and that said company is indebted to various creditors whose names are contained in the schedule B annexed to the said bill, with the amount due in each case set opposite their respective names."

As has just been stated, said schedule does not refer to Clarence B. Iserman as a creditor at all, and only claims on behalf of Harvey Iserman $353.48.

As has been previously stated, the receiver was appointed on the 13th day of November, 1905, and on the 11th day of January, 1906, he sold all the assets of the company, and on the 26th day of February, 1906, the claims of the Isermans were filed, each having annexed to his claim the shares of stock issued to him.

The claimants seek to break the force of the facts just recited, which so clearly indicate that they were stockholders and were not creditors, by claiming that their standing as stockholders or creditors should be determined with respect to certain agreements between them and Crowe and the company sought to be

completed on the 20th of October, 1905. It is shown that there was a series of agreements which had been talked over between the parties, and which were intended to be executed on the 20th of October, 1905. I shall not take time to recite what these contemplated agreements were, or to consider whether the claim of the Isermans with respect to their rights under those agreements would have been well founded or otherwise if said agreements had ever been consummated. My reason for disregarding those agreements and the arguments based thereon is that I find as a fact that prior to the time that those agreements were in contemplation the Isermans had agreed with the company to accept stock for the sums of money advanced up to the 25th of September, 1905. I can find no evidence in the suit which even tends to prove that at the time the Isermans agreed in September of 1905 to take stock under their options for the moneys advanced there was any qualification or contingency, or that the matters subsequently attempted to be included in the contracts of October 20th were even broached. In fine, I cannot see any connection whatever between the completed arrangement of September 25th, 1905, and the unsuccessful and uncompleted arrangement subsequently attempted to be consummated on October 20th, 1905.

The result is that the determination of the receiver is sustained with respect to the amounts disallowed, and the appeals of the Isermans are dismissed.

With respect to the sums of money advanced by either of the Isermans to the company after the 25th of September, 1905, I do not think it anywhere appears that they had agreed to take stock therefor, or that in advancing these sums they were exercising any option to take stock. I therefore think the receiver's determination is correct in so far as it finds the Isermans creditors for sums advanced to the company after the 25th of September, 1905.

I have not sufficiently examined the accounts in detail to determine whether there are any sums allowed by the receiver to the Isermans which are not proper. It may be that some of the sums claimed were not advanced to the company, or were advanced to the company prior to September 25th, 1905. If so,

that matter can be adjusted upon settling the final decree or order with respect to these appeals. Such settlement may be made upon notice.